UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MIEDEL,

     Plaintiff,

                                        Case No. 1:25-cv-406

v.

                                        Hon. Hala Y. Jarbou

ALLY BANK,

     Defendant.

_____/

## **OPINION**

Plaintiff David Miedel, proceeding pro se, brings this lawsuit against Defendant Ally Bank ("Ally") due to its alleged attempts to enforce a forged automobile financing contract. Miedel asserts claims under the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, and the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.*, as well as state law claims of fraudulent misrepresentation, negligent misrepresentation, and forgery. On May 6, 2025, Ally moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. (ECF No. 12.) Miedel has filed a motion for a temporary restraining order (ECF No. 17) as well as two documents entitled "Motion for Declaratory Relief and Order to Release Lien" (ECF Nos. 6, 20).

On July 22, 2025, Magistrate Judge Sally Berens issued a report and recommendation ("R&R") that the Court dismiss the case for lack of standing and/or failure to state a claim. (ECF No. 48.) Miedel filed an objection to the R&R on July 31, 2025. (ECF No. 49.) As explained below, Miedel has not established standing to bring a federal claim, and no diversity jurisdiction exists over his state law claims. Thus, the Court will overrule Miedel's objection, approve and adopt the R&R, deny Miedel's motions as moot, and dismiss the case.

# I. BACKGROUND

This case centers around a 2024 Ford F150 that Miedel obtained on credit from Morrie's Okemos Ford ("Morrie's").[1]  Miedel initially signed a Retail Installment Sale Contract ("RISC") with Morrie's on September 23, 2024.  (*See* 9/23/2024 RISC, ECF No. 1-5, PageID.31.)  That RISC stated that Morrie's would sell an F150 to "Spartan Roofing Innovations LLC" ("Spartan"). (*Id.*, PageID.31.)  Miedel signed the RISC as an agent of Spartan.  (*Id.*, PageID.35.)  However, Ally rejected the September 23 RISC because "it did not conform to the terms of the credit application Ally approved."  (Ally 4/11/2025 Letter, ECF No. 1-6, PageID.37; *see* Compl., ECF No. 1, PageID.1.)  Morrie's then sent Ally a new RISC, dated September 27, 2024, which again listed Spartan as the buyer.  (*See* 9/27/2024 RISC, ECF No. 1-5, PageID.25, 29.)  This RISC contained Miedel's electronic signature and identified him as an agent.  (*Id.*, PageID.29.) However, Miedel alleges that Morrie's forged his signature on the September 27 RISC.  (Compl., PageID.1.)  Ally accepted this RISC and issued the associated loan.  (*See id.*, PageID.1.)  On October 1, 2024, Miedel—apparently unaware of the forged RISC—signed a third RISC with Morrie's that again purported to sell a Ford F150 to Spartan, with Miedel acting as an agent.  (*See* 10/1/2024 RISC, ECF No. 1-5, PageID.19, 23.)

Some time after signing the October 1 RISC, Miedel learned that Morrie's had sent the September 27 RISC to Ally, and he informed Ally that the loan had been procured through fraud. (Compl., PageID.2.)   However, Ally continued to seek payment under the loan.  (*Id.*, PageID.2.) Miedel has apparently not made his loan payments, which has negatively affected Spartan's credit score.  (*See* Payment History, ECF No. 1-6, PageID.44; 9/29/2024 Ally Letter, ECF No. 1-6, PageID.45.)  On April 11, 2025, a repossession agent took an F150 from Miedel's property to

---

[1] This section describes the facts as alleged in Miedel's complaint.

satisfy the loan.  (Compl., PageID.4.)  However, Miedel owns two F150s, and the 2025 F150 that

the repossession agent took was not the 2024 F150 on which Ally had the lien.  (Pl.'s Resp., ECF

No. 16, PageID.16.)  The agent returned the 2024 F150 less than an hour after taking it.  (Compl.,

PageID.4.)

## II. LEGAL STANDARDS

### A. R&R Review

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

### B. Rule 12(b)(1)

The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack"

on subject matter jurisdiction.  A "facial attack" on subject matter jurisdiction "merely questions

the sufficiency of the [complaint]."  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325

(6th Cir. 1990).  Facial attacks are reviewed under the same standard as applied to a Rule 12(b)(6)

motion: the Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject

matter jurisdiction exists based on the complaint.  *Id.*

No presumption of truth applies in a "factual attack" on subject matter jurisdiction.  *Id.*

Factual attacks challenge the existence of jurisdiction based on facts outside the pleadings. *RMI*

*Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  To resolve a

factual attack, "the trial court is free to weigh the evidence and satisfy itself as to the existence of

its power to hear the case. . . . [T]he existence of disputed material facts will not preclude the trial

court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen v. First*

*Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890–91 (3d Cir. 1977)).  The plaintiff bears the burden of proof of jurisdiction when a factual attack is made.  *Id.*  And the Court has "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists[.]" *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  Because Defendants rely only on the complaint and the attached documents, the Court treats this as a facial attack.

### C. Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).  The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to  defendant's motion to dismiss so  long  as  they  are  referred  to  in  the

Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

#### A. Lack of Standing to Bring Federal Claim

The magistrate judge recommended that the Court dismiss Miedel's TILA claim for lack of standing. A plaintiff only has standing if they have "such a personal stake in the outcome of the controversy as to warrant [the] invocation of federal-court jurisdiction." *State by & through Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019). This requires the plaintiff to show they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "If no plaintiff has standing, then the court lacks subject-matter jurisdiction." *Tenn. Gen. Assembly*, 931 F.3d at 507.

Miedel's TILA claim is centered on the alleged forgery of the September 27 RISC. The magistrate judge concluded that Miedel lacks standing because the loan at issue here was provided to Spartan—which is a limited liability company ("LLC")—rather than to Miedel himself. Thus, any injury related to the loan or the forgery is suffered by Spartan and not Miedel, even if Miedel is a member of Spartan. Miedel initially argues that he can bring a personal claim related to the September 27 RISC because the document contains his signature and does not clarify that he was signing as an agent of Spartan. However, the RISC lists Spartan as the buyer of the truck (9/27/2024 RISC, PageID.25), states that the truck is for business use (*id.*), includes Spartan as the

5

"[p]rinted [n]ame" under Miedel's signature (*id.*, PageID.29), and identifies Miedel as an agent (*id.*).[2]  Thus, the RISC purported to be a contract with Spartan, not Miedel.

The Court of Appeals has held that a plaintiff "may not assert [a corporation]'s . . . federal statutory claims solely on the basis of his status as the sole shareholder of the corporation." *Quarles v. City of East Cleveland*, 1999 WL 1336112, at *3 (6th Cir. Dec. 20, 1999) (citing *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 602–03 (6th Cir. 1988)); *see also Gaff v. FDIC*, 814 F.2d 311, 315 (6th Cir. 1987) (noting it is a "general precept of corporate law that a shareholder of a corporation does not have a personal or individual right of action for damages based solely on an injury to the corporation"), *on reh'g in part*, 828 F.2d 1145 (6th Cir. 1987).  On the other hand, "'[w]here the shareholder suffers an injury separate and distinct from that suffered by other shareholders,' or the corporation as an entity, the shareholder may maintain an individual action in his own right." *Quarles*, 1999 WL 1336112, at *3 (*quoting Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1194 (7th Cir. 1985)).  "That same rule applies to an LLC and its members."  *Olita v. McCalla*, No. 2:21-CV-2763, 2022 WL 1644627, at *5 (W.D. Tenn. May 24, 2022).  Thus, Miedel can only bring a claim based on an individualized injury to himself.

Miedel argues that the injury here affects him personally rather than in his capacity as an LLC member.  To determine whether Miedel can bring a direct suit for his injuries—rather than a derivative suit on behalf of Spartan—the Court looks to the state law under which Spartan is organized.  *See Lockhart v. Garzella*, No. 3:19-CV-00405, 2021 WL 1721602, at *5 (S.D. Ohio Apr. 30, 2021) (applying state law to determine shareholder's standing to bring federal claim); *Kennedy v. Venrock Assocs.*, 348 F.3d 584, 589 (7th Cir. 2003) ("The question whether a suit is derivative by nature or may be brought by a shareholder in his own right is governed by the law

---

[2] Miedel attached the RISC to his complaint. (*See* ECF No. 1-5, PageID.25.)

of the state of incorporation."); *McKinzie v. Davidson*, No. 05-61761-CIV, 2006 WL 8432332, at *9 (S.D. Fla. July 10, 2006) (collecting cases).

The problem is that Miedel's complaint does not allege—and the record does not indicate—the state in which Spartan is organized.  Miedel has the burden of establishing standing, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), so it is his burden to show that state law allows him to bring this suit.  The failure to clarify which law applies here constitutes a failure to satisfy that burden.  *Cf. In re Bank of Am. Credit Prot. Mktg. & Sales Pracs. Litig.*, No. MD 11-2269 TEH, 2012 WL 1123863, at *2 (N.D. Cal. Apr. 3, 2012) ("[T]he failure to specify the governing law renders this cause of action fatally defective, as Defendants cannot adequately respond to a claim without knowing under what state's law the claim is brought."); *Hines v. Overstock.com, Inc.*, No. 09 CV 991 SJ, 2013 WL 4495667, at *12 (E.D.N.Y. Aug. 19, 2013) ("[T]he failure to cite to the law of a particular state in alleging common law claims deems them so vague that defendant cannot reasonably prepare a response.").

In sum, because all of Miedel's alleged injuries are connected to Spartan, and because the Court cannot determine to what extent Miedel can personally bring suit related to those injuries, it will dismiss the case for lack of standing. [3]

---

[3] There is some ambiguity in the case law as to whether shareholder standing implicates subject matter jurisdiction or merely prudential considerations.  *Compare Old Blast, Inc. v. Operating Eng'rs Loc. 324 Pension Fund*, 663 F. App'x 454, 456-57 (6th Cir. 2016) (treating shareholder standing as jurisdictional) *and Gaff v. FDIC*, 814 F.2d 311, 315, 319 (6th Cir. 1987), *on reh'g in other part*, 828 F.2d 1145 (6th Cir. 1987) (same) *with Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990) (suggesting shareholder standing is related to prudential concerns, not Article III).  The distinction is irrelevant here: even if the Court has the power to exercise jurisdiction, it would decline to do so on prudential grounds.  And Miedel has the burden of establishing prudential standing, just as he has the burden of establishing Article III standing. *See McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012).

**B. Failure to State a Federal Claim**

Even if Miedel had standing to bring a TILA claim, he has failed to state one for several reasons.  First, it is not clear from Miedel's complaint or briefings what violations of TILA he is alleging.  TILA "assure[s] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a).  Miedel's allegations here relate to an alleged forgery, not any failure to disclose credit terms.[4]

Second, TILA does not apply to "[c]redit transactions involving extensions of credit primarily for business [or] commercial . . . purposes."  15 USC § 1603(1).  Miedel objects that even though Spartan was listed as the owner of the F150, he used the truck for personal rather than business purposes.  Even if the Court were to accept this allegation—which does not appear in the complaint—it does not make TILA applicable.  TILA's disclosure provisions require "disclos[ures] to the person who is obligated on a . . . *consumer* credit transaction." *Id.* § 1631(a) (emphasis added).  "The adjective 'consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person." *Id.* § 1602(i).  Regardless of the purpose for which Miedel acquired the F150, the credit itself was extended to Spartan, which is not a natural person. *See Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980).

Finally, Miedel alleges that his signature was forged on the September 27 RISC, and thus he is not obligated under it.  This entails that the RISC is void and TILA does not apply. *See Walker v. Michael W. Colton Tr.*, 47 F. Supp. 2d 858, 865 (E.D. Mich. 1999) ("[A]llegedly forged

---

[4] Miedel argues that the contract allows him to bring against Ally any claims he would have against Spartan.  Regardless, Miedel has not identified a TILA violation by Spartan either.

documents receive no protection under TILA."); *Jensen v. Ray Kim Ford, Inc.*, 920 F.2d 3, 4 (7th

Cir. 1990) (plaintiffs cannot bring suit under TILA based on an allegedly forged contract because

"the forged document was a nullity and created no obligation").

      In sum, Miedel fails to state a claim under TILA.[5]

### C. Lack of Jurisdiction Over State Law Claims

      As discussed above, the Court will dismiss Miedel's TILA claim, leaving only his state

law claims.  Miedel asserts that the Court has diversity jurisdiction over these claims under 28

U.S.C.A. § 1332, which allows federal courts to hear cases between citizens of different states

when over $75,000 is in controversy.  *Id.* § 1332(a).  Miedel alleges that he is a Michigan resident,

and that Ally is headquartered in Michigan.  (Compl., PageID.1.)  These facts would generally

defeat diversity jurisdiction because a corporation is a citizen of the "State . . . where it has its

principal place of business," 28 U.S.C. § 1332(c)(1), which is "normally . . . the place where the

corporation maintains its headquarters," *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).

      However, Miedel contends that "as a national bank, Ally's citizenship is governed by 28

U.S.C. § 1348."  (Pl.'s Obj., ECF No. 49, PageID.400.)  That statute provides that "[a]ll national

banking associations shall, for the purposes of all other actions by or against them, be deemed

citizens of the States in which they are respectively located."  28 U.S.C. § 1348.  But this statute

does not help Miedel, for two reasons.  First, "national banking associations" refers to "corporate

---

[5] In some of Miedel's filings, he also alleges violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*., but he states in his objections that he only referred to the FDCPA for context and did not intend to "initiate a standalone FDCPA claim" (Pl.'s Obj., ECF No. 49, PageID.407).  Regardless, the FDCPA is inapplicable because it does not apply to debtors who are LLCs (rather than natural persons), *see Valhalla Inv. Props., LLC v. 502, LLC*, 832 F. App'x 413, 415 (6th Cir. 2020), and it does not apply to creditors collecting on their own debts, *see Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003).

entities chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury."

*Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006).  Miedel does not allege that this is true of

Ally.  Second, the state where a national bank is "located" is the "State in which its main office,

as set forth in its articles of association, is located."  *Id.* at 307.  Thus, even under § 1348, Ally is

presumably a Michigan citizen because that is the location of its headquarters.

Regardless, "the party asserting diversity jurisdiction bears the burden of establishing the

parties' citizenships."  *Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi*, 43 F.4th 624, 627

(6th Cir. 2022).  Even if Ally could conceivably be a citizen of some other state, Miedel has failed

to sufficiently allege its citizenship, and thus has failed to establish diversity jurisdiction.

Because the Court has dismissed the federal claim for lack of jurisdiction—and because it

has no independent subject matter jurisdiction over the state law claims—it cannot exercise

supplemental jurisdiction over the state law claims.[6] *Musson Theatrical, Inc. v. Fed. Exp. Corp.*,

89 F.3d 1244, 1255 (6th Cir. 1996) ("If the court dismisses plaintiff's federal claims pursuant to

Rule 12(b)(1), then supplemental jurisdiction can *never* exist."), *amended on denial of reh'g*,

No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998).  Even if the Court instead dismissed the

federal claim for failure to state a claim, it would decline to exercise supplemental jurisdiction

over the remaining state law claims.  *See* 28 U.S.C. § 1367(c) (the Court "may decline to exercise

supplemental jurisdiction" when it "has dismissed all claims over which it has original

jurisdiction"); *Musson*, 89 F.3d at 1255 ("After a 12(b)(6) dismissal, there is a strong presumption

in favor of dismissing supplemental claims.").

---

[6] Even if shareholder standing is a prudential determination, the Court should still dismiss the state law claims after declining to exercise jurisdiction over the federal claims.  *See Gaff*, 814 F.2d at 319.

## IV. CONCLUSION

Because Miedel lacks standing to bring a TILA claim, the Court will dismiss that claim

and decline to exercise supplemental jurisdiction over Miedel's state law claims.  The Court will

therefore dismiss the case and deny Miedel's motions (ECF Nos. 6, 17, 20) as moot.

An order and judgment will issue in accordance with this Opinion.


Dated: September 29, 2025                               /s/ Hala Y. Jarbou
                                                        HALA Y. JARBOU
                                                        CHIEF UNITED STATES DISTRICT JUDGE